**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

TROY LAMORRIS AARON,

       Petitioner,

vs.                           Case No.:    3:15-cv-629-J-34JBT
                                                   3:12-cr-170-J-34JBT

UNITED STATES OF AMERICA,

       Respondent.

_____/

## ORDER

This case is before the Court on Petitioner Troy Lamorris Aaron's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1, Motion to Vacate) and Memorandum of Law and Brief in Support of § 2255 Motion (Civ. Doc. 2, Memorandum).[1] Aaron claims that trial counsel gave ineffective assistance because a conflict of interest caused him not to file various pretrial motions, and that appellate counsel gave ineffective assistance by failing to raise meritorious arguments on appeal. The United States has responded (Civ. Doc. 9, Response), and Aaron has replied (Civ. Doc. 14, Reply). The case is ripe for a decision.

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that a hearing is not necessary to resolve the merits of this action. See Rosin

---

[1] Citations to the record in the underlying criminal case, United States vs. Troy Lamorris Aaron, Case No. 3:12-cr-170-J-34JBT, will be denoted as "Crim. Doc. __." Citations to the record in the civil § 2255 case, Case No. 3:15-cv-629-J-34JBT, will be denoted as "Civ. Doc. __."

[2] Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3] For the reasons set forth below, Aaron's Motion to Vacate is due to be denied.

## I.    Background

In February 2012, a confidential source working with the Baker County Sheriff's Office made a series of video and audio recorded controlled purchases of cocaine from Aaron and another individual named Paul Williams. Presentence Investigation Report (PSR) at ¶¶ 12-18. As a result of those purchases, state law enforcement authorities arrested Aaron on related charges on June 5, 2012. Id. at ¶ 19. A few months later, on October 4, 2012, a federal grand jury sitting in the Middle District of Florida indicted Aaron on one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846 (Count One), and three counts of distribution of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts Two through Four). (Crim. Doc. 1, Indictment). This Court issued a warrant for Aaron's arrest (Crim. Doc. 4, Federal Arrest Warrant), which was returned executed on October 11, 2012 (Crim. Doc. 6, Execution of Arrest Warrant).

---

[3]     Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

The Court initially appointed Susan Good Yazgi of the Federal Public Defender's Office to represent Aaron. (Crim. Doc. 13). Ms. Yazgi's representation lasted less than four months, however. On February 8, 2013, Ms. Yazgi moved to withdraw from the case because "she [was] unwilling to file the motion to suppress as requested by [Aaron]." (Crim. Doc. 28, Motion to Withdraw at 1, ¶ 2). The Court granted the Motion to Withdraw and appointed A. Russell Smith, an experienced member of the Court's Criminal Justice Act ("CJA") panel to represent Aaron. (Crim. Doc. 31, Order Granting Motion to Withdraw).[4]

Two and a half months later, Aaron filed a pro se motion to terminate Mr. Smith's representation and to appoint yet another lawyer. (Crim. Doc. 38, Notice of Filing Defendant's Pro Se Motion; Crim. Doc. 38-1, Pro Se Motion to Relieve Counsel). Aaron complained that Mr. Smith would not file various pretrial motions on his behalf; that Mr. Smith was not investigating potential witnesses; and that Mr. Smith was pressuring him to plead guilty. Pro Se Motion to Relieve Counsel at 2-3. Aaron alleged that counsel was providing ineffective assistance and that he was entitled to the appointment of a new lawyer. Id. at 3.

The Honorable Joel B. Toomey, United States Magistrate Judge, held a prompt hearing on the pro se motion, at which Aaron, Mr. Smith, and the Assistant United States Attorney were present. (Crim. Doc. 41, Minute Entry for April 30, 2013, Hearing). Mr. Smith opened by saying "there [wasn't] any acrimony between [him and Aaron]," but that Aaron had lost faith in his representation because Aaron believed Mr. Smith was trying to "coerce

---

[4]    Mr. Smith has been a member of the Florida Bar since 1980. He spent about three years as an assistant public defender before opening his own firm, where he has devoted 60-65% of his practice to criminal defense, including trying over 50 cases. As of 2012, Mr. Smith had been on the CJA panel for nearly 30 years and was a past president of the Florida Association of Criminal Defense Lawyers. Hardy v. United States, Case No. 3:14-cv-765-J-32JBT, 2017 WL 1355011, at *6 (M.D. Fla. Apr. 13, 2017).

him into pleading guilty." (Crim. Doc. 107, Transcript of April 30, 2013 Hearing at 2) ("Apr. 30, 2013 Hrg. Tr."). Mr. Smith disagreed with Aaron's assessment, but said he believed "ultimately every client has the right to have confidence in counsel, and he obviously does not have confidence in me." Id. Judge Toomey then held part of the hearing ex parte to explore the issues between Aaron and Mr. Smith. (See generally Crim. Doc. 115, Transcript of April 30, 2013, Ex Parte Proceedings) ("April 30, 2013, Ex Parte Hrg. Tr.").[5]

During the ex parte portion of the hearing, Mr. Smith first explained that "from the beginning" he had requested that Aaron furnish the names of any alibi or other witnesses he might have, but Aaron was "reluctant or unwilling" to do so. Id. at 2-3. With respect to one particular witness, Paul Williams, Mr. Smith explained that he had had difficulty locating him, but once he did do so, he and Aaron mutually agreed that Williams would not be "useful." Id. at 3. Addressing Aaron's claim that he would not file pretrial motions, Mr. Smith explained that Aaron was frustrated because out of 11 or 12 individuals targeted in a sweeping operation by the Bradford County Sheriff's Office, Aaron was the only one whose case was transferred to federal court. Id. at 4. As a result, Aaron's potential sentence was 35 times as great as the sentences given the other defendants, who were each given county jail time after being allowed to plead guilty in state court. Id. at 4-5. Aaron believed he was being selectively prosecuted in federal court, but Mr. Smith

---

[5]     The Court has determined that the sealed transcript of the ex parte portion of the April 30, 2013 hearing (Crim. Doc. 115) should be unsealed. Under Rule 1.09(c), Local Rules, United States District Court for the Middle District of Florida (Local Rule(s)), a document should not remain sealed for more than one year unless the order authorizing the document to be filed under seal says otherwise. Here, there is no order directing that the transcript remain under seal for more than one year. Because more than one year has passed since the transcript was filed, the seal should be lifted. Additionally, Aaron has waived any attorney-client privilege with respect to discussions between him and Mr. Smith concerning trial preparation, because he has put those matters at issue through the particular ineffective assistance claims contained in the Motion to Vacate. See Johnson v. Alabama, 256 F.3d 1156, 1178-79 (11th Cir. 2001).

explained that "the case law on selective prosecution just does not support a motion to suppress or dismiss alleging selective prosecution. There were otherwise reasonable bases to prosecute Mr. Aaron in federal court," including that he was already serving "two different supervised release terms." Id. at 5. Mr. Smith could discern "no unlawful or improper motive" for Aaron's case being transferred to federal court. Id. Moreover, Mr. Smith explained that Aaron's arrest was "pursuant to a warrant based upon video recorded transactions, audio recorded transactions," and that "[t]he basis for the issuance of the warrant was sufficient as a matter of law." Id. Mr. Smith added that Aaron's former public defender had "had the same types of conversations with Mr. Aaron" about the pretrial motions. Id. While recognizing that Aaron's situation was unfortunate, Mr. Smith explained that "[t]he selective prosecution argument is without basis in law" and there was "no legal basis to file a motion in the case." Id. at 5-6. Turning to Aaron's claim that he felt pressured to plead guilty, Mr. Smith recalled that he had been trying to explain to Aaron that he was facing a lengthy sentence, and that by going to trial he could face a sentence up to ten years longer than if he pled guilty because the United States indicated it would file a notice of prior convictions under 21 U.S.C. § 851. Id. at 6. As Mr. Smith summarized:

> He feels this is coercive. I feel I have an obligation to make sure he understands the consequences of going to trial and losing.
>
> … He sees me as trying to force a plea. I see myself as trying to give him the information he needs to make an educated decision about what to do with his cases.

Id. at 6-7.

The Magistrate Judge asked Mr. Smith about the quality of communication between him and Aaron. Mr. Smith responded:

> I speak frankly with him and he speaks frankly with me. I don't think we pull any punches.
>
> I think at times early on he found – he took offense at that. I hope he now realizes that he's better off with somebody who's going to tell him the unvarnished truth than somebody who's just going to say, "Don't worry about it," pat him on the hand, and tell him it's going to be all right and then wave good-bye as he goes to prison for a very long time.
>
> So I hope we're past that part, but – but yes, we went nose to nose a few times early on because he's a strong-willed person and I am as well, and I wasn't just going to back down and tell him what he wanted to hear. I told him what I thought the truth was, and it wasn't good news.
>
> So, you know, we started off that way.

Id. at 7-8. The Magistrate Judge then asked whether Mr. Smith could continue as Aaron's attorney if the pro se motion were denied. Id. at 8. Mr. Smith responded that "there is a continuing problem with his trust of me," which he said "<u>may</u> adversely impact trial preparation," but he did not say he could no longer represent Aaron effectively. Id. (emphasis added).

Given his turn to speak, Aaron voiced his frustration that Mr. Smith was not pursuing the pretrial motions he thought were worth pursuing, particularly given the length of the sentence he was facing. See id. at 10. Aaron acknowledged that he had had similar issues with his former public defender not filing the motions he wanted. Id. The Magistrate Judge explained:

> Well, I can tell you you've had two of the most experienced, probably best criminal defense lawyers here in Jacksonville, so if they can't make you happy, it doesn't sound like anybody is going to be able to make you happy, so I guess I'm having trouble seeing where this is going to go.
>
> It sounds to me like we're going to be back here in a month or two months with another lawyer and then a month or two months after that with a different lawyer, and we can't just keep doing that and delaying these proceedings indefinitely on the thought that maybe eventually you might find somebody who you're satisfied with.

<u>Id.</u> at 11. Aaron reiterated his belief that Mr. Smith was not pursuing a meritorious motion to suppress. The Magistrate Judge responded:

> THE COURT: Well, you understand a lawyer can only file – ethically file things that they think have a sufficient legal basis. They can't just file something because you tell them to file it, and any lawyer is going to tell you that same thing.
>
> You understand that?
>
> DEFENDANT: I mean, yes, sir, I understand that. I mean…
>
> THE COURT: So, I mean, you've had two, like I say, competent lawyers look at the issues that you're talking about, and both of them tell you that not only do they not have merit, they don't even have enough merit to where they feel comfortable that they can ethically file something.
>
> \*\*\*
>
> I mean, that's – they are both telling you that they don't see that they can ethically file these motions you want them to file because they're – they're groundless. They're – yes, you're facing a lot of time, but that doesn't mean that there has to be a motion out there that's going to get you off of this.

<u>Id.</u> at 12, 13. The Magistrate Judge concluded:

> All right. Well, based on everything I've heard, I don't see a basis to have Mr. Smith withdraw or have him relieved as counsel. I think it's the same basic problem that occurred with Ms. Yazgi, that Mr. Aaron wants certain things done that both lawyers ethically and as experienced lawyers believe that they – that they can't do as officers of the court.
>
> There appears to be adequate communication. There appears to be competent representation, and I basically allowed – Ms. Yazgi basically put in her motion that given the amount of time that Mr. Aaron was facing, that she wanted him to have a second opinion, essentially.
>
> And so even that motion was – could have been denied at the time, but I think given the amount of time that Mr. Aaron is facing, the Court allowed that. The Court appointed a very experienced attorney.

We're back here with basically the same issues, and I have no reason to think that if I granted the motion, we wouldn't be back here again in two months with a different attorney, with – saying the same thing.

So like I said, based on everything that I've heard, I don't see a – I don't see grounds for – for relieving Mr. Smith. I don't see a total communication breakdown or anything like that. It's more just a difference – just Mr. Aaron being unhappy really – really with your situation, I think, is really what you're unhappy with, and the law.

Id. at 14-15. Based on these findings, the Magistrate Judge denied the Pro Se Motion to Relieve Counsel. Id. at 16-17.

After the Magistrate Judge denied Aaron's pro se motion, the ex parte portion of the hearing ended and the proceedings resumed with the Assistant United States Attorney present. The parties then turned their attention to scheduling matters. Notably, Mr. Smith indicated that Aaron expressed an interest in continuing the trial to the July 2013 term to repair the attorney-client relationship and to allow Mr. Smith time to investigate certain other issues. April 30, 2013 Hrg. Tr. at 8. The United States did not oppose the continuance, and the Magistrate Judge accordingly continued the trial. Id. at 9.

Aaron appealed the Magistrate Judge's denial of the Pro Se Motion to Relieve Counsel. (Crim. Doc. 44, Appeal from Magistrate Judge's Order). Another judge of this Court, the Honorable Timothy J. Corrigan, permitted Aaron to file a pro se brief in support of the appeal (Crim. Doc. 45, Order Permitting Pro Se Brief; Crim. Doc. 46, Pro Se Brief), to which the United States responded (Crim. Doc. 49, USA's Response to Pro Se Brief).[6] Upon review of Aaron's Pro Se Brief and the response, the Court affirmed the Magistrate Judge's denial of the Pro Se Motion to Relieve Counsel for the reasons stated by the Magistrate Judge on the record. (Crim. Doc. 66, Order Affirming Denial of Pro Se Motion).

---

[6] This case was originally assigned to Judge Corrigan who handled it until early July 2013, when he determined that the case should be transferred to the undersigned pursuant to Local Rule 1.04(b).

The Court held a status conference on July 8, 2013, shortly before beginning jury selection. At the status conference, neither Mr. Smith nor Aaron gave any indication that Mr. Smith's and Aaron's relationship had broken down. (See generally Crim. Doc. 108, Final Pretrial Conference Transcript). At that time, Mr. Smith argued a motion in limine on Aaron's behalf to exclude prior-act evidence and otherwise seemed well prepared for trial. Id.

Prior to trial, the government dismissed Counts One, Three, and Four of the Indictment (Crim. Doc. 56; Crim. Doc. 78), so Aaron went to trial only on Count Two (for distribution of cocaine). However, as Mr. Smith had predicted, the government did file an information to establish prior convictions under 21 U.S.C. § 851 (Crim. Doc. 67, § 851 Information), which significantly increased Aaron's potential sentence.

Once the trial began, Mr. Smith provided a zealous defense, lodging over a dozen objections during the presentation of testimony, the charging conference, and closing argument. (See Crim. Doc. 110, Trial Transcript, Volume I ["Trial Tr. Vol. I"] at 11, 67-68, 76, 118, 126, 129, 140, 150-51, 169-70, 243, 244; Crim. Doc. 111, Trial Transcript, Volume II ["Trial Tr. Vol. II"] at 12, 53, 60). He extensively cross-examined the government's main witness, a confidential source named David Prescott, in an effort to undermine his credibility by portraying him as dishonest. Trial Tr. Vol. I at 95-117, 119-20. During closing arguments, Mr. Smith asserted that Aaron was merely present when Prescott purchased $40 of cocaine from Paul Williams, but that Aaron himself did not participate in the crime; that Prescott's testimony was the only evidence tying Aaron to the commission of a crime; and that Prescott was untrustworthy. Trial Tr. Vol. II at 31-50. Ultimately, however, the jury returned a verdict of guilty. (Crim. Doc. 87, Jury Verdict).

Mr. Smith continued to represent Aaron through the sentencing phase. (See Crim. Doc. 112, Sentencing Transcript ["Sent. Tr."]). The Court determined that Aaron's advisory sentencing range under the United States Sentencing Guidelines was 18 to 24 months with respect to violating the terms of supervised release from a 2001 federal criminal case; 24 to 30 months for violating the terms of supervised release from a 2004 federal criminal case; and 262 to 327 months for the instant distribution offense. Id. at 11-12, 23. Varying significantly below the Guidelines range, the Court imposed a total sentence of 197 months in prison, consisting of 155 months for the instant offense, 18 months for the revocation of supervised release in the 2001 case, and 24 months for the revocation of supervised release in the 2004 case, each to run consecutively. Id. at 51-52; (Crim. Doc. 98, Judgment).

Aaron appealed his conviction and sentence. (Crim. Doc. 99, Notice of Appeal). The Court appointed a different lawyer, Valarie Linnen, to represent Aaron on appeal. (Crim. Doc. 104, Order Appointing Appellate Counsel). Ms. Linnen ultimately filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967). Based on an independent examination of the record, the Eleventh Circuit Court of Appeals determined there were no arguable issues of merit and affirmed Aaron's conviction and sentence. (Crim. Doc. 118, USCA Order); United States v. Aaron, 579 F. App'x 961 (11th Cir. 2014).

Following the Eleventh Circuit's decision, Aaron did not seek certiorari review from the United States Supreme Court. On May 8, 2015, Aaron timely filed the instant Motion to Vacate.

## II. The Motion to Vacate

Aaron raises two grounds in the current Motion to Vacate. The first ground is essentially a reiteration of the Pro Se Motion to Relieve Counsel, which the Court previously denied following a hearing. Aaron alleges that due to "conflict(s) of interest" and "divided loyalties," Mr. Smith gave ineffective assistance of counsel. Memorandum at 5-8. As in the Pro Se Motion to Relieve Counsel, Aaron complains that Mr. Smith failed to investigate or file pretrial motions regarding alleged violations of his constitutional rights. Aaron suggests that he was denied his Fifth, Sixth, and Eighth Amendment rights during early proceedings in state court (before the federal indictment and arrest). See id. at 7. Aaron also vaguely claims that the early state proceedings were tainted and "his rights were so violated that the fundamental defects that occurred resulted in a miscarriage of justice." Id. He further claims that such a "miscarriage of justice" carried over into the federal proceedings. Id. However, Aaron does not specifically describe what these "fundamental defects" in the state proceedings were except for one thing: that the warrant affidavit for Aaron's arrest by state authorities was not signed by a judge. Id.; (see also Civ. Doc. 2-1 at 2, Arrest Warrant Affidavit).[7] Aaron indicates that he had urged his first attorney (Ms. Yazgi) and his second attorney (Mr. Smith) to investigate the defective arrest warrant, but that both refused to do so. Id. Aaron alleges that Mr. Smith should have had the affiant for the state arrest warrant, Sergeant Tommy Sapp of the Bradford County Sheriff's Office, "interviewed and or [sic] brought into Federal Court pursuant to pre-trial Motions for testimony upon the record concerning the aforementioned." Id. Mr. Smith's

---

[7]    Notably, Aaron only submits the first page of the state arrest warrant affidavit and omits the second page. The page that follows the first page of the state arrest warrant affidavit is the second page of an unrelated laboratory report by the Drug Enforcement Administration. (Civ. Doc. 2-1).

failure to do so "precluded [him] from establishing a base and foundation pertinent to his trial and defense," though Aaron does not elaborate further. Id.

In Ground Two, Aaron alleges that his appellate lawyer, Ms. Linnen, also gave ineffective assistance by filing an Anders brief. Memorandum at 8-9. Aaron claims that appellate counsel should have raised (1) the ineffective assistance claims alleged in Ground One, (2) the Court's alleged disregard of the 18 U.S.C. § 3553 sentencing factors, and (3) the prosecutor's alleged non-compliance with then-Attorney General Eric Holder's directive that recidivist enhancements (such as under 21 U.S.C. § 851) should not be applied to low-level drug offenders like Aaron.

The United States responds that the Motion to Vacate lacks merit. The United States asserts that Aaron's grievances with Mr. Smith were addressed on the record in connection with his Pro Se Motion to Relieve Counsel, and that Aaron's complaints are unfounded. The United States also contends that Aaron's allegation of ineffective assistance of appellate counsel is refuted by the fact that the Eleventh Circuit undertook an independent examination of the record and concluded that there were no arguable issues of merit. As such, the United States asserts that the Motion to Vacate should be denied.

### III.    Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by

law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

As with any Sixth Amendment ineffective assistance of counsel claim, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that his counsel's deficient performance sufficiently prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). In determining whether the petitioner has satisfied the first requirement, i.e. that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks, 26 F.3d at 1036. The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Id. To satisfy the second requirement, that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry

if the defendant makes an insufficient showing on one." <u>Id.</u> at 697; <u>see also</u> <u>Wellington v. Moore</u>, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

### A. Ground One

As noted above, in Ground One Aaron alleges that, due to a conflict of interest, trial counsel gave ineffective assistance and failed to file various pretrial motions. Aaron vaguely alleges that his Fifth, Sixth, and Eighth Amendment rights were violated during early state court proceedings, before his federal indictment and arrest, and that these "fundamental defects" created a "miscarriage of justice" that carried over into the federal proceedings. He further alleges that Mr. Smith, his second trial counsel, failed to investigate these matters. However, the only issue that Aaron identifies with any specificity is Mr. Smith's failure to file a motion to suppress because the state arrest warrant did not bear a judge's signature.

To the extent Aaron alleges that counsel gave <u>per se</u> ineffective assistance due to a conflict of interest, this claim is refuted by the record. To prove a claim of ineffective assistance based on a conflict of interest, a petitioner must show two things: (1) that an actual conflict of interest existed, and (2) that the conflict had an adverse effect on counsel's performance. <u>Porter v. Singletary</u>, 14 F.3d 554, 560 (11th Cir. 1994) (citing <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 350 (1980)). "Once a defendant has satisfied both the actual conflict and adverse affect [sic] prongs of the <u>Cuyler</u> test, petitioner need not demonstrate prejudice, because in the case of an actual conflict, prejudice is presumed." <u>Id.</u> (citing <u>Danner v. United States</u>, 820 F.2d 1166, 1169 (11th Cir. 1987)). A complete

breakdown in communication between a lawyer and his client may suggest a conflict so serious that a presumption of prejudice is appropriate. See United States v. Soto Hernandez, 849 F.2d 1325, 1328 (10th Cir. 1988) ("A complete breakdown in communication between an attorney and client may give rise to such a presumption"); United States v. Young, 482 F.2d 993, 995 (5th Cir. 1973).[8] However, "[n]ot every bare allegation of a disagreement between lawyer and client is enough to trigger a right to new counsel. An even smaller subset of such disagreements will (even arguably) amount to an actual conflict of interest." United States v. Segarra-Rivera, 473 F.3d 381, 385 (1st Cir. 2007). Notably, a "conflict" in the ordinary sense of the word between a defendant and his lawyer over strategic decisions does not equate to a "conflict of interest." United States v. Fields, 483 F.3d 313, 353 (5th Cir. 2007).

> Were disagreements between attorney and client to be treated in the same manner as conflicts arising from multiple representation of clients—with resulting possible per se reversal without the necessity of proving prejudice — the nature of appeals in criminal cases would be dramatically altered. The odds are that many an unsuccessful defendant would be found nursing some disagreement with counsel.

United States v. Mota-Santana, 391 F.3d 42, 46 (1st Cir. 2004). Moreover, a defendant's very accusation that his attorney gave ineffective assistance, thereby requiring the attorney to defend his preparation and strategy, is not itself enough to create a divergence of the attorney's interests from the defendant's. United States v. Jones, 482 F.3d 60, 75 (2d Cir. 2006).

The existence of a conflict is not determined "solely according to the subjective standard of what the defendant perceives," nor is "[a] defendant's general loss of

---

[8]     Decisions handed down by the Fifth Circuit Court of Appeals on or before the close of business on September 30, 1981, are binding in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981).

confidence or trust in his counsel, standing alone," enough. Thomas v. Wainwright, 767 F.2d 738, 742 (11th Cir. 1985). Moreover, "a possible, speculative or merely hypothetical conflict does not suffice." Porter, 14 F.3d at 560 (citing Lightbourne v. Dugger, 829 F.2d 1012, 1023 (11th Cir. 1987)). Rather, the petitioner must point to specific instances in the record that suggest his interests were impaired or compromised for the benefit of another party. See Oliver v. Wainwright, 782 F.2d 1521, 1524-25 (11th Cir.), cert. denied, 479 U.S. 914 (1986).

As discussed earlier, the Court held a hearing on Aaron's Pro Se Motion to Relieve Counsel after he complained about Mr. Smith not filing various pretrial motions, among other things. See generally April 30, 2013, Hrg. Tr.; April 30, 2013, Ex Parte Hrg. Tr. Mr. Smith explained that both he and Aaron's former public defender believed the motions Aaron wanted to be filed were without a basis in law or fact. April 30, 2013, Ex Parte Hrg. Tr. at 4-6, 7. With respect to the quality of communication, Aaron said he and Mr. Smith were experiencing "a moment of silence in between us," id. at 10, but Mr. Smith relayed that he spoke "frankly with [Aaron] and [Aaron] speaks frankly with me. I don't think we pull any punches," id. at 7. Mr. Smith stated that Aaron's mistrust of him "may adversely impact trial preparation," but he did not agree with the reasons for Aaron's mistrust, and he stopped short of saying he could not represent Aaron effectively. Id. at 8. The Magistrate Judge found, in essence, that there was simply a disagreement between Mr. Smith and Aaron about whether there was any merit to the pretrial motions Aaron wanted filed: "I think it's the same basic problem that occurred with Ms. Yazgi, that Mr. Aaron wants certain things done that both lawyers ethically and as experienced lawyers believe that they – that they can't do as officers of the court." Id. at 14-15. As the Magistrate Judge explained to

Aaron earlier, two "competent lawyers look[ed] at the issues that you're talking about, and both of them [told] you that not only do they not have merit, they don't even have enough merit to where they feel comfortable that they can ethically file something." Id. at 12. The Magistrate Judge further found that "[t]here appears to be adequate communication. There appears to be competent representation…. I don't see a total communication breakdown or anything like that. It's more just a difference – just Mr. Aaron being unhappy really" with his situation and the law. Id. at 15. Aaron appealed the Magistrate Judge's findings but the Court affirmed the decision. See Order Affirming Denial of Pro Se Motion.

Thus, the Court has previously found there was no communication breakdown between Aaron and Mr. Smith, and that Mr. Smith was providing Aaron with effective representation. Aaron does not point to anything in the record that rebuts this conclusion. Nor does Aaron point to any specific instances in the record that suggest an actual conflict or an impairment of his interests. Oliver, 782 F.2d at 1524-25. The only thing Aaron points to is Mr. Smith's isolated statement at the April 30, 2013, hearing that Aaron's mistrust "may adversely impact trial preparation." April 30, 2013, Ex Parte Hrg. Tr. at 8 (emphasis added). However, Mr. Smith did not say he could no longer effectively represent Aaron, and "a possible, speculative or merely hypothetical conflict does not suffice" to establish a claim of ineffective assistance. Porter, 14 F.3d at 560 (citing Lightbourne, 829 F.2d at 1023). The only "conflicts" that existed between Aaron and Mr. Smith were disagreements over the wisdom of going to trial and the merits of the pretrial motions Aaron wanted filed. Such strategic disagreements do not amount to a "conflict of interest." Fields, 483 F.3d at 353. Nor does the mere fact that Aaron accused Mr. Smith of being ineffective suffice to

17

create a conflict. <u>Jones</u>, 482 F.3d at 75.[9] Accordingly, the Court finds that Aaron has failed to establish the existence of an actual conflict of interest.

Moreover, even if Aaron could establish an actual conflict, he has failed to show that it adversely affected the representation. If there was any doubt about Mr. Smith's ability to represent Aaron, it was put to rest by Mr. Smith's vigorous litigation of the motion to exclude prior-act evidence, the trial, the jury instructions, and sentencing. To the extent Aaron suggests that a conflict of interest impaired Mr. Smith's willingness to file pretrial motions, there is an alternative explanation for his unwillingness to do so: the motions Aaron wanted were legally and factually baseless. Indeed, not only did Mr. Smith think that Aaron's desired pretrial motions were groundless, but Aaron's former public defender, Ms. Yazgi, reached the same conclusion. As such, Aaron has failed to show that a conflict of interest – if one even existed – adversely affected Mr. Smith's representation.

Turning to Aaron's specific claim that Mr. Smith was ineffective for failing to file a motion to suppress because the <u>state</u> arrest warrant lacked a judge's signature, the Court finds that this claim lacks merit as well. Mr. Smith could only have been ineffective for failing to file the motion to suppress if the motion would have been meritorious. <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375 (1986). If no constitutional violation occurred, however, Aaron could not have been prejudiced by counsel's failure to file the motion. <u>See</u> <u>Castillo v. United States</u>, 816 F.3d 1300, 1303 (11th Cir. 2016) (citing <u>Kimmelman</u>, 477 U.S. at 375).

Nothing in the Fourth Amendment requires a judge's signature on an arrest warrant. <u>See</u> U.S. Const., amend. IV; <u>United States v. Shakir</u>, Case No. 3:04-cr-206-J-20MCR,

---

[9]     If the law were otherwise, any defendant could manufacture a conflict of interest simply by accusing their lawyer of being ineffective, thereby forcing a change of counsel any time he pleases.

2005 WL 8141729, at *3 (M.D. Fla. Aug. 5, 2005), Report and Recommendation adopted, Case No. 3:04-cr-206-J-20MCR, Doc. 695. What matters in substance is that a neutral and detached magistrate made a finding of probable cause. See United States v. Jackson, 617 F. Supp. 2d 316, 320-21 (M.D. Pa. 2008) (internal citations omitted). However, the absence of a magistrate's signature is a technical defect that does not itself invalidate a warrant. United States v. Cruz, 774 F.3d 1278, 1285-86 (10th Cir. 2014) (Fourth Amendment does not condition a warrant's validity on bearing a judge's signature); United States v. Lyons, 740 F.3d 702, 725 (1st Cir. 2014) (collecting cases reflecting "the consistent rejection of formalistic approaches to signatures in warrants by federal appellate courts in other contexts") (citations omitted).

Here, Aaron claims simply that his state arrest warrant was "un-authorized as it [was] 'not signed' by any Judge." Memorandum at 7. Aaron's allegation is contrary to the law, because the mere absence of a signature does not prove that the warrant was unauthorized. Cruz, 774 F.3d at 1285-86; Lyons, 740 F.3d at 724-25. Aaron also does not point to anything in the record suggesting that a neutral and detached magistrate never made a finding of probable cause. While Aaron submitted the first page of the Bradford County Sherriff's Office warrant affidavit for his arrest, in which the section for the judge's signature is blank, he omitted the second page. (Civ. Doc. 2-1). In its place Aaron submitted the second page of an unrelated DEA lab report instead. See id. Thus, not only does Aaron fail to allege the actual absence of a finding of probable cause, he leaves the contents of the second page of the warrant affidavit unknown. Moreover, there is evidence in the record that suggests the warrant was supported by a magistrate's finding of probable

cause. At the April 30, 2013, Hearing, Mr. Smith explained why he would not file the pretrial motions Aaron wanted him to file (including a motion to suppress):

> …[T]his was an arrest pursuant to a warrant based upon video recorded transactions, audio recorded transactions, and the video does not show Mr. Aaron; it shows Mr. Williams, but there is audio as well, controlled buys.
>
> The basis for the issuance of the warrant was sufficient as a matter of law…
>
> ***
>
> … You know, I'm not perfect, but I do not see a legal basis for the filing of the motions he requests.

April 30, 2013, Ex Parte Hrg. Tr. at 5, 7. Thus, Mr. Smith (and Ms. Yazgi as well) concluded that the arrest warrant was legally sufficient. These facts strongly suggest that the warrant was adequate and that a neutral magistrate made a finding of probable cause to arrest Aaron.

In any event, even if the state arrest warrant were defective, Aaron never explains how the defective state warrant would invalidate the federal grand jury indictment or federal arrest warrant in the instant case. In other words, Aaron does not explain how his federal indictment and arrest are implicated, even if the state arrest warrant was invalid. He only alleges in conclusory fashion that a "miscarriage of justice" in the state proceedings "carried over into his Federal Proceedings." Memorandum at 7. Such a conclusory statement, however, is inadequate to show that filing a motion to suppress would have resulted in the exclusion of any evidence or the dismissal of any charges in this federal case. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague or conclusory allegations will not support a claim of ineffective assistance of counsel).

Accordingly, Aaron has failed to show that he had a meritorious motion to suppress based on the state arrest warrant, such that trial counsel was ineffective in failing to pursue

it. Not one, but two experienced attorneys determined that the various pretrial motions Aaron wanted them to file were baseless. As such, Aaron's allegations of ineffective assistance in Ground One lack merit and are due to be denied.[10]

## B. Ground Two

In Ground Two, Aaron alleges that his appellate lawyer, Valarie Linnen, gave ineffective assistance by filing an <u>Anders</u> brief. Memorandum at 8-9. Aaron identifies three allegedly meritorious issues she should have raised: (1) the ineffective assistance claims in Ground One; (2) the Court's alleged disregard of the 18 U.S.C. § 3553 sentencing factors; and (3) the United States' application of the § 851 sentencing enhancement despite then-Attorney General Eric Holder's directive that recidivist enhancements not be applied to low-level drug dealers.

<u>Strickland</u> applies when reviewing the effectiveness of appellate counsel. <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000). Thus, a petitioner raising an ineffective assistance claim relating to appellate counsel must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) the outcome of his appeal would have been different, but for the unreasonably deficient performance. <u>Black v. United States</u>, 373 F.3d 1140, 1142 (11th Cir. 2004). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." <u>Jones v. Barnes</u>, 463 U.S.

---

[10] In his Reply brief, Aaron briefly alleges, for the first time, that trial counsel was ineffective "when he prematurely objected to questions and testimony that guaranteed a mistrial, did not move to … suppress audio/ video evidence, or obtain expert analysis of the audio/ video evidence." Reply at 3. The Court will not consider these conclusory claims because they were raised for the first time in a reply brief without having sought leave to amend. <u>Snyder v. United States</u>, 263 F. App'x 778, 779-80 (11th Cir. 2008); <u>see also</u> <u>Oliveiri v. United States</u>, 717 F. App'x 966, 967 (11th Cir. 2018) (claims raised for the first time in a reply brief are waived).

745, 751–52 (1983). As such, "[a]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith, 528 U.S. at 288. "[I]t is still possible to bring a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." Id.

As a preliminary matter, the Court notes that following an independent review of the record, the Eleventh Circuit agreed with counsel's assessment that there were no arguable issues of merit and affirmed Aaron's conviction and sentence. Aaron, 579 F. App'x 961. The Eleventh Circuit did so after allowing Aaron to file a response to counsel's Anders brief. United States vs. Troy Lamorris Aaron, No. 13–15248, Docket Entry of May 27, 2014 (11th Cir.). The Eleventh Circuit's opinion therefore lends significant support to appellate counsel's judgment in filing an Anders brief.

Moreover, the specific issues Aaron claims that appellate counsel should have briefed lack merit. First, Aaron claims that appellate counsel should have raised the ineffective-assistance-of-trial-counsel claims contained in Ground One. However, the underlying ineffective assistance claims themselves lacked merit for the reasons discussed above, and in any event, ineffective assistance claims ordinarily may not be raised on direct appeal, Thomas v. United States, 572 F.3d 1300, 1305-06 (11th Cir. 2009). Second, Aaron claims appellate counsel should have briefed the Court's alleged failure to consider the 18 U.S.C. § 3553 sentencing factors, but that would have made for a weak argument. Sentencing counsel did not object to the sentence or the manner in which it was imposed, Sent. Tr. at 59, so any challenge to the procedural reasonableness of the sentence would have been under the demanding standard of plain error review, United

States v. Vandergrift, 754 F.3d 1303, 1307 (11th Cir. 2014) (applying plain error review to unpreserved objection to the procedural reasonableness of defendant's sentence) (citation omitted). Because Aaron's total prison sentence of 197 months was a significant variance below his Guidelines range (which was 262 to 327 months with respect to the distribution offense alone), it would have been extremely difficult for Aaron to show that his "substantial rights" were affected by the Court's alleged failure to consider the § 3553 factors. See id. Indeed, while the Court did not specifically identify each of the § 3553 factors, the Court's discussion of the reasons for the significant variance reflects the Court's consideration of these factors. Sent. Tr. at 49-54, 56-57. Thus, appellate counsel could reasonably have chosen not to raise this argument. Finally, Aaron claims appellate counsel should have challenged the government's decision to apply the § 851 enhancement despite the former Attorney General's guidance that such enhancements not be applied to low level drug offenders.[11] This argument would have lacked merit because this particular policy, like other internal policies of the Department of Justice, does not create any enforceable rights for defendants. United States v. Camille, 579 F. App'x 814, 817 (11th Cir. 2014); see also United States v. Bagnell, 679 F.2d 826, 832 (11th Cir. 1982) (internal Department of

---

[11]     On August 12, 2013, the United States Attorney General issued a memorandum regarding the Justice Department's policy on charging mandatory-minimum sentences for certain nonviolent, low-level drug offenders. Memorandum to the U.S. Att'ys & Assistant Att'y Gen. for the Criminal Div.: Dep't Policy on Charging Mandatory Minimum Sentences & Recidivist Enhancements in Certain Drug Cases (Aug. 12, 2013) ("August 12 Memorandum"). The memorandum instructs prosecutors to decline to charge the drug quantity necessary to trigger a mandatory minimum sentence if the defendant meets certain criteria. It also instructs prosecutors to "decline to file an information pursuant to 21 U.S.C. § 851 unless the defendant is involved in conduct that makes the case appropriate for severe sanctions." Id. at 3. It further states: "The policy set forth herein is not intended to create or confer any rights, privileges, or benefits in any matter, case, or proceeding." Id. at 2 n. 2 (emphasis added).

Justice policy regarding venue did not create any enforceable private rights). Thus, this argument would have failed as well.

Each of the arguments Aaron claims appellate counsel should have raised lacked merit. As such, appellate counsel was not ineffective for not raising them. Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (appellate counsel is not ineffective for not briefing a meritless issue). Accordingly, relief on Ground Two is due to be denied.

### IV.    Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Aaron seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Aaron "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable

whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED**:

1. Petitioner Troy Lamorris Aaron's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2. For the reasons stated herein, see supra at 4 n.5, the Clerk of the Court is directed to unseal the Transcript of the April 30, 2013, Ex Parte Proceedings (Crim. Doc. 115) and place it on the public docket.

3. The Clerk shall enter judgment in favor of the United States and against Troy Lamorris Aaron, and close the file.

4. If Aaron appeals the denial of the petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 7th day of June, 2018.

MARCIA MORALES HOWARD
United States District Judge

Lc19

Copies:

Counsel of Record

Pro se petitioner